Todd Blanche
Acting Attorney General of the United States
Eastern District of Washington
Thomas J. Hanlon
Assistant United States Attorney
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 27 2026

SEAN F. MCAVOY, CLERK
_____, DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:25-CR-2011-SAB-3 |
| Plaintiff, | Plea Agreement |
| v. | |
| LILIBETH ALTAMIRANO-RABADAN, | |
| Defendant. | |

Plaintiff United States of America, by and through Thomas J. Hanlon, Assistant United States Attorney for the Eastern District of Washington, and Defendant Lilabeth Altamirano-Rabadan ("Defendant"), both individually and by and through Defendant's counsel, Gregory L. Scott, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the *Superseding* Indictment filed on ~~February 11~~, *SEPTEMBER 9, 2025*, 2025, which charges Defendant with False Statement During Purchase of Firearm, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2).

Defendant understands that the following potential penalties apply:

a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

b.    a term of supervised release of not more than 3 years;

c.    a fine of up to $250,000; and

d.    a $100 special penalty assessment.

2.    Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.   Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.   no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.   Waiver of Constitutional Rights

PLEA AGREEMENT - 3

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

      a.     the right to a jury trial;

      b.     the right to see, hear and question the witnesses;

      c.     the right to remain silent at trial;

      d.     the right to testify at trial; and

      e.     the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of being a False Statement During Purchase of Firearm, in violation of 18 U.S.C. § 922(a)(6), the United States would have to prove the following beyond a reasonable doubt.

      a.     *First*, Cabela's was a licensed firearms dealer;

      b.     *Second*, in connection with acquiring (1) a Glock, model 19, bearing serial number BXRG099, and (2) a Glock, model 19, bearing serial number AGRW518, from Cabela's, the defendant made a false statement;

      c.     *Third,* the Defendant knew the statement was false; and

PLEA AGREEMENT - 4

d.    *Fourth*, the false statement was material; that is, the false statement had a natural tendency to influence or was capable of influencing the Cabela's employee into believing that the (1) a Glock, model 19 GEN 5, bearing serial number BXRG099, and (2) a Glock, model 19, bearing serial number AGRW518 could be lawfully sold to the defendant.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On or about January 17, 2023, Task Force Officer Gonzalez ("TFO Gonzalez") observed an Instragram story that appeared to depict the recent purchase of firearms. TFO Gonzalez believed the Instragram account belonged to Ramon Junior Coy (hereinafter "COY.") TFO Gonzalez knew that November 21, 2016, COY had been convicted of a controlled substance offense and had been sentenced to more than three years in prison. At that time, COY was being supervised by the Washington State Department of Corrections (hereinafter "DOC.") As such, TFO Gonzalez knew COY was prohibited from possessing and/or purchasing firearms. TFO Gonzalez knew the Defendant was in a romantic relationship with COY.

On January 17, 2023, Resident Agent in Charge Kingston ("RAC Kingston") ran the Defendant's name through E-Trace. RAC Kingston learned that on January 1, 2023, the Defendant had purchased two Glock firearms (Glock,

PLEA AGREEMENT - 5

model 19 GEN 5, bearing serial number BXRG099 and Glock, model 19, bearing serial number AGRW518) from Cabela's in Union Gap, Washington. Cabela's is a licensed firearm dealer.

Task Force Officer Schad ("TFO Schad") traveled to Cabela's and obtained the video surveillance footage of the purchase of the two firearms. TFO Schad observed that the video footage depicted the Defendant and COY looking at firearms. The video footage depicted COY speaking with a Cabela's employee. COY was observed selecting multiple firearms that were in a glass case. The Cabela's employee would then hand the firearms to COY for inspection. TFO Schad observed that the video footage depicted COY handling multiple firearms and working the actions of multiple firearms. After inspecting multiple firearms, the Cabela's clerk was advised that the two Glock firearms were going to be purchased. The Cabela's clerk placed the two Glock firearms into boxes. The video footage depicted COY pulling a large amount of US Currency out of his pocket. COY counted the US Currency and then handed US Currency to the Defendant.

After receiving the money from COY, the Defendant walked to the counter to fill out the ATF Form 4473's for the Glock firearms. The Defendant stated on the forms that she was the "actual" buyer of the Glock firearms. Based on her answers to the questions on the ATF Form 4473's, the Cabela's employee believed that the firearms could be lawfully sold to the Defendant. However, the Defendant knew that she had made a material false statement on each ATF Form 4473. The Defendant knew that she was actually purchasing the Glock firearms for COY. After paying for the firearms, the Defendant and COY left the Cabela's store.

After the mandatory waiting period, the Defendant returned to the Cabela's store and took physical possession of both of the Glock firearms.

Law enforcement developed a plan to arrest COY when he checked in for his DOC visit. On January 25, 2023, law enforcement officers observed a vehicle

PLEA AGREEMENT - 6

arrive at the DOC office in Yakima, Washington. The Defendant was operating the vehicle. COY was seated in the front passenger seat. There were no other occupants in the vehicle. COY was subsequently arrested. TFO Schad interviewed the Defendant about the Glock firearms she purchased at Cabela's. The Defendant stated that the firearms belonged to her. TFO Schad later informed the Defendant of COY's Instragram postings and that he had viewed the Cabela's video footage. The Defendant admitted that she had purchased one of the Glock firearms for the Defendant. The Defendant also stated that the Defendant put something on the Glock firearm to make it automatic.

A law enforcement officer observed what appeared to be a firearm sticking out from under the front passenger seat of the Defendant's vehicle. This is the same seat where COY had been seated. Law enforcement officers obtained and executed a search warrant on the vehicle. During the execution of the search warrant, the officers found a Glock, model 19 GEN 5, serial number BWRG099 under the front passenger seat. The firearm had been modified with a "Glock switch" device which modifies the firearm to fire as a machine gun as defined in 26 U.S.C. 5854(a). The officers also found COY's wallet in the car that contained the Cabela's receipt for the Glock firearms.

The second Glock firearm (Glock, model 19, bearing serial number AGRW518) was recovered during a search warrant of a residence in Yakima, Washington. This is a residence that COY shared with Louis Steven Quintana, Jr. The second Glock firearm was found in the bedroom of Louis Steven Quintana, Jr., who was known to be a convicted felon and who was also being supervised by the DOC.

The Glock firearms were manufactured in Austria and imported by Glock, Inc., in Smyrna, Georgia.

8.    The United States' Agreements

PLEA AGREEMENT - 7

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.  The United States Attorney's Office for the Eastern District of Washington also agrees to dismiss ~~Count 4 of the Indictment~~ the remaining counts of the superseding indictmen filed on ~~February 11~~ SEPT. 9, 2025 at the time of sentencing.  *GLS* [initials]

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level is 20. U.S.S.G. § 2K2.1(a)(4)(B).

b.    Specific Offense Characteristics

The United States believes that the base offense level is increased 5-levels. U.S.S.G. § 2K2.1(b)(6)(C).  The Defendant reserves the right to argue that this enhancement is not applicable.

The United States and the Defendant agree that the base offense level is decreased 2-levels.  U.S.S.G. § 2K2.1(b)(10).

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

i.    accepts this Plea Agreement;

PLEA AGREEMENT - 8

        ii.        enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

        iii.       demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

        iv.       provides complete and accurate information during the sentencing process; and

        v.        does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

        d.      <u>Agreements Regarding Representations to the Court</u>

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

        i.        The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

PLEA AGREEMENT - 9

ii.     The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv.     The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v.      The United States and Defendant may each respond to any arguments presented by the other;

vi.     In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher

than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

f.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10.    Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a

PLEA AGREEMENT - 11

recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend a sentence at the low end of the applicable guideline range, as calculated by the United States.

The Defendant may recommend any legal sentence.

11.    Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

PLEA AGREEMENT - 12

a.      The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b.      Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

c.      Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider.  Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider.  Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12.     Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine.  Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.     Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.     Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.     Additional Violations of Law Can Void Plea Agreement

PLEA AGREEMENT - 13

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

PLEA AGREEMENT - 14

      a.     Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

      b.     The United States may prosecute Defendant on all available charges;

      c.     The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

      d.     The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

18.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 15

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Acting Attorney General of the United States

_____          4/27/26
Thomas J. Hanlon                         Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          27 APRIL 2026
Lilabeth Altamirano-Rabadan              Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's

PLEA AGREEMENT - 16

decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept Defendant's guilty plea.

_____        27 APRIL 2026
Gregory L. Scott                        Date
Attorney for Defendant

PLEA AGREEMENT - 17